UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

RICO SIMMONS, §
§
    Plaintiff, §
§
v. § CIVIL ACTION NO. 3:19-CV-1206-B
§
TRITON ELEVATOR, LLC and DERALD §
ARMSTRONG, §
§
    Defendants. §

MEMORANDUM OPINION AND ORDER

Before the Court is Defendants Triton Elevator, LLC ("Triton") and Derald Armstrong

("Armstrong")'s Motion to Dismiss (Doc. 25). Triton and Armstrong move to dismiss Plaintiff Rico

Simmons's 42 U.S.C. § 1981 claims of retaliation and discrimination. For the reasons explained

below, the Court **GRANTS IN PART** and **DENIES IN PART** the motion. Further, the Court

**ORDERS** Simmons to amend his complaint within **FOURTEEN (14)** days of the entry of this

Order.

I.

BACKGROUND[1]

This is an employment-discrimination action arising from Armstrong's firing of Simmons.

Simmons is an African-American man who formerly worked as an engineer for Triton. Doc. 8, Am.

Compl., ¶¶ 2, 8. Armstrong is Triton's Chief Executive Officer. *Id.* ¶ 9. During Simmons's

employment with Triton, Armstrong hired his own former brother-in-law (hereinafter "Danny"). *Id.*

---

[1] The Court recites the facts as alleged in Simmons's first amended complaint (Doc. 8).

¶ 10. According to Simmons, Danny immediately began making racially offensive comments to Simmons, such as referring to him as "boy" and "homeboy." *Id.* Simmons subsequently complained of the comments to Armstrong, who failed to address Simmons's complaints. *Id.* ¶ 11. So Simmons then "filed a Charge of Discrimination with the Equal Employment Opportunity Commission" (EEOC). *Id.* After Simmons complained to Armstrong and the EEOC, "other employees began making discriminatory comments toward and around" Simmons. *Id.* ¶ 12. For example, the head of Human Resources referred to him as "boy" and "homeboy," and Simmons's supervisor told Simmons that he once "fired a monkey," referring to an African-American former employee. *Id.* Additionally, "Armstrong informed [Simmons] that Armstrong had once dated an African-America[n] woman, but had never told anyone his 'secret.'" *Id.* ¶ 13.

On the day Simmons was terminated, he heard his supervisor and Danny "referring to him as 'that nigger.'" *Id.* ¶ 14. Thereafter, Simmons interrupted them, informing them that he could hear them "and could answer any questions Danny might have." *Id.* An argument ensued, Armstrong entered the room, and he stated "that he was 'sick of [Simmons's] shit,' because he had 'filed on people'" and that Simmons was fired. *Id.*

As a result, Simmons filed a *pro se* action in this Court. *See generally* Doc. 3, Compl. Subsequently, he retained counsel and filed an amended complaint (Doc. 8) alleging § 1981 claims of discrimination and retaliation against both Triton and Armstrong. Triton and Armstrong filed an answer to the amended complaint, which included a motion to dismiss in the same filing. *See* Doc. 22, Answer, 3. The Court struck the motion to dismiss and ordered Triton and Armstrong to file the motion as a separate document. Doc. 23, Electronic Order. Triton and Armstrong filed their standalone motion to dismiss, and Simmons responded to the motion. *See generally* Doc. 25, Mot.;

Doc. 30, Resp. Based on the parties' agreement, the Court thereafter extended Triton and Armstrong's deadline to reply, *see* Doc. 37, Electronic Order, but they did not file a timely reply brief. Accordingly, their motion to dismiss is now ripe for review.

## II.

## LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) authorizes a court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." *Id.* 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). "The court's review [under Rule 12(b)(6)] is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim *and* referenced by the complaint." *Ironshore Europe DAC v. Schiff Hardin, L.L.P.*, 912 F.3d 759, 763 (5th Cir. 2019) (emphasis added) (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)).

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

When well-pleaded facts fail to achieve this plausibility standard, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (cleaned up).

### III.

### ANALYSIS

Below, the Court analyzes Triton and Armstrong's motion to dismiss. The Court first rejects Simmons's contention that Triton and Armstrong waived their right to move for dismissal. Then, the Court addresses Triton and Armstrong's sole argument for dismissal—that Simmons has not sufficiently pleaded that his "race was a 'but-for' cause of his injury[.]" Doc. 25, Defs.' Mot., 1. Analyzing this argument with respect to each of Simmons's § 1981 claims, the Court concludes that while Simmons states a claim for retaliation, he has not stated a claim for discrimination. In light of this ruling, the Court provides Simmons an opportunity to amend his complaint.

A.    *Triton and Armstrong Did Not Waive Their Right to Move to Dismiss Simmons's Claims.*

Although Simmons asserts that Triton and Armstrong waived their right to bring a Rule 12(b)(6) motion by filing their motion and answer contemporaneously, Doc. 30, Pl.'s Resp., 2, the Court disagrees.

Rule 12 provides that a motion asserting a defense under Rule 12(b) "must be made before pleading if a response pleading is allowed." Fed. R. Civ. P. 12(b). But Rule 12 goes on to clarify that "[f]ailure to state a claim upon which relief can be granted . . . may be raised . . . in any pleading allowed . . . under Rule 7(a)[.]" *Id.* 12(h)(2)(A); *accord Quintanilla v. K-Bin, Inc.*, 993 F. Supp. 560, 562 (S.D. Tex. 1998) ("[Rule] 12(h)(2) clearly preserves the defense of failure to state a claim upon which relief can be granted from the waiver mechanism of Rule 12(h)(1), and allows parties to raise such a defense as late as during trial."). Here, Triton and Armstrong asserted their

- 4 -

failure-to-state-a-claim defense in their answer, which is a Rule 7(a) pleading. *See* Fed. R. Civ. P. 7(a)(2).[2] Accordingly, Triton and Armstrong did not waive their right to bring a Rule 12(b)(6) motion to dismiss by filing their motion and answer concurrently.

B.    *The Court Grants Triton and Armstrong's Motion to Dismiss Simmons's § 1981 Discrimination Claim.*

Triton and Armstrong contend that Simmons's § 1981 discrimination claim fails because Simmons has not adequately pleaded that his "race was a 'but-for' cause of his injury[.]" Doc. 25, Defs.' Mot., 1. Simmons, however, asserts that he "is not yet required" to show that he was terminated due to his race—rather, he need only allege a *prima facie* case of discrimination under the *McDonnell Douglas* burden-shifting framework. Doc. 30, Pl.'s Resp., 3 (citing *McDonnell Douglas Corp. v. Green*, 411. U.S. 792, 802–04 (1973)). Further, Simmons argues that irrespective of his burden, his "[c]omplaint is replete with allegations that his termination was motivated by discrimination." *Id.*

Section 1981 provides that "[a]ll persons within the . . . United States shall have the same right . . . to make and enforce contracts," which "includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." § 1981(a)–(b). This statute "serves as a deterrent to employment discrimination and a means of punishing employers who discriminate on the basis of race." *Carroll v. Gen. Accident Ins. Co. of Am.*, 891 F.2d 1174, 1176 (5th Cir. 1990). A plaintiff alleging a § 1981 discrimination claim must sufficiently plead: "(1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant[s]; and (3) the discrimination concerns

---

[2] To maintain clarity on the docket, the Court thereafter ordered Triton and Armstrong to file the motion to dismiss as a separate document. *See* Doc. 23, Electronic Order.

one or more of the activities enumerated in the statute." *Sherrod v. United Way Worldwide*, 821 F. App'x 311, 316 (5th Cir. 2020) (per curiam) (citation omitted).

Contrary to Simmons's suggestion, he has the burden of pleading facts that, taken as true, permit the Court to infer "that race was a but-for cause of [his] injury" in order to sustain his § 1981 discrimination claim. *See Comcast Corp. v. Nat'l Assoc. of African American-Owned Media*, —U.S.—, 140 S. Ct. 1009, 1014–15 (2020). Indeed, the Supreme Court has clarified that *McDonnell Douglas* has no bearing on the "causation standards" for discrimination claims. *Id.* at 1019. Rather, the *McDonnell Douglas* framework is "a tool for assessing claims, typically at summary judgment, when the plaintiff relies on indirect proof of discrimination." *Id.* (citations omitted). So irrespective of the *McDonnell Douglas* framework, a plaintiff alleging a § 1981 discrimination claim must "initially plead and ultimately prove that, but for [his] race, [he] would not have suffered the loss of legally protected right." *Id.*

Simmons has not done so. He alleges multiple racially discriminatory comments made by individuals at Triton, such as use of the terms "homeboy," "monkey," "[w]igger," and "nigger," Doc. 8, Am. Compl., ¶¶ 12, 14, as well as Armstrong's "secret" that he "had once dated an African-America[n] woman[.]" *Id.* ¶ 13. But Simmons does not allege facts creating the inference that he was fired *because of* his race. In fact, his complaint suggests that his filing of an EEOC complaint was the basis for his termination. *See id.* ¶ 14 (alleging that Armstrong fired Simmons immediately after stating that "he was sick of [Simmons's] shit" and that Simmons "filed on people" (quotation marks omitted)). Under these circumstances, Simmons's allegations are not "sufficient factual matter . . . to state a claim to relief that is plausible on its face under the but-for causation

standard," *Comcast*, 140 S. Ct. at 1019 (quotation and quotation marks omitted), and the Court **DISMISSES** Simmons's § 1981 discrimination claim **WITHOUT PREJUDICE**.[3]

C.     *The Court Denies Triton and Armstrong's Motion to Dismiss Simmons's § 1981 Retaliation Claim.*

As a preliminary matter, Triton and Armstrong do not clarify whether they also move to dismiss Simmons's § 1981 retaliation claim—the only argument in their motion is that Simmons fails to meet his burden of showing that his "race was a 'but-for' cause of his injury[.]" Doc. 25, Defs.' Mot., 1. In any event, causation between race and injury is not an element of a § 1981 retaliation claim. *See White Glove Staffing, Inc. v. Methodist Hosps. of Dall.*, 947 F.3d 301, 308 (5th Cir. 2020) ("To assert a successful § 1981 retaliation claim, [the plaintiff] must show (1) that it engaged in activities protected by § 1981; (2) that an adverse action followed; and (3) a causal connection between the *protected activities* and the adverse action." (emphasis added) (cleaned up)). Consequently, the Court **DENIES** Triton and Armstrong's motion to dismiss Simmons's retaliation claim.[4]

D.     *The Court Grants Simmons Leave to Amend His § 1981 Discrimination Claim.*

Given that this is the Court's first opportunity to assess the sufficiency of Simmons's allegations, the Court finds it appropriate to provide him one chance to amend his complaint in light of the deficiencies noted in this Order. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). Accordingly, the Court **ORDERS** Simmons to file a second amended complaint within **FOURTEEN (14)** days of the date of this Order. Simmons must

---

[3] This holding is based only upon consideration of Triton and Armstrong's argument. The Court does not otherwise examine the sufficiency of Simmons's discrimination claim.

[4] Again, the Court addresses only the argument raised by Triton and Armstrong; the Court does not purport to otherwise address the sufficiency of Simmons's retaliation allegations.

file a second amended complaint irrespective of whether he decides to proceed only with his § 1981 retaliation claim or re-plead his § 1981 discrimination claim.

## IV.

## CONCLUSION

For the reasons above, the Court **GRANTS IN PART** and **DENIES IN PART** Triton and Armstrong's motion to dismiss (Doc. 25). Namely, the Court denies the motion insofar as Triton and Armstrong move to dismiss Simmons's retaliation claim, but the Court grants the motion to the extent Triton and Armstrong seek dismissal of Simmons's discrimination claim. Nonetheless, the Court provides Simmons one opportunity to re-plead his discrimination claim and **ORDERS** Simmons to file a second amended complaint within **FOURTEEN (14)** days of the entry of this Order.

**SO ORDERED.**

**SIGNED: December 30, 2020.**

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE